IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-559

A.G., individually and as the Natural Parent and Legal Guardian of L.G., a Minor,

Plaintiffs,

v.

THE CITY OF STATESVILLE, MICHAEL FATTALEH, in his official and individual capacity, and IREDELL-STATESVILLE BOARD OF EDUCATION,

Defendants.

COMPLAINT
[JURY TRIAL DEMANDED]

Plaintiffs A.G., individually and as the Natural Parent and Legal Guardian of L.G., a Minor, complaining of Defendants, allege and say as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff A.G. is an adult citizen and resident of Iredell County, North Carolina. A.G. is the natural parent and legal guardian of L.G., a minor. L.G. is presently nine years old. A.G. is prosecuting this action individually and in her representative capacity on behalf of L.G. A.G. and L.G. are collectively referred to as "Plaintiffs."

2. At all pertinent times to the allegations contained herein, L.G. was a minor child suffering from autism, sensory processing disorders, mental illness, learning disabilities, and behavioral issues.

3. Defendant City of Statesville (the "City") is a body politic and a municipal corporation organized under the laws of the State of North Carolina. The Statesville Police Department ("Statesville PD") is a department of the City. All allegations set forth herein against the Statesville PD also refer to and include the principals, agents, employees, servants and independent contractors of the City, either directly or vicariously, under the principles of corporate liability, apparent authority, agency, ostensible agency, or *respondeat superior*.

1

4. Upon information and belief, Defendant Michael Fattaleh ("Officer Fattaleh") is an adult resident and citizen of Iredell County, North Carolina. Officer Fattaleh was an officer with the Statesville PD and employee of the City at the time of the incident giving rise to this Complaint. At the time of the incident, Officer Fattaleh was assigned as a school resource officer at Pressly Alternative School, a public school ("Pressly").

5. Defendant Iredell-Statesville Board of Education ("Board") is a local board of education organized and existing under the laws of the State of North Carolina, with its principal place of operation in Iredell County, North Carolina. Pressly is a school owned and operated by the Board. All allegations set forth herein against Board also refer to and include the principals, agents, employees and servants of Board, either directly or vicariously, under the principles of corporate liability, apparent authority, agency, ostensible agency, or *respondeat superior*.

6. Upon information and belief, the City waived governmental immunity that might otherwise apply to the claims in this case. Upon information and belief, the City has purchased insurance, either by contract with an insurance company, by participation in a local government risk pool, or use of a funded reserve which has been deemed to be the same as the purchase of insurance, which provides coverage – including coverage to its officers and employees – for the claims raised in this action. The City has thereby waived its governmental immunity on these claims.

7. As set forth below, the City is not entitled to governmental immunity under 42 U.S.C. § 1983.

8. Upon information and belief, the Board has waived governmental immunity that might otherwise apply to the claims in this case. Upon information and belief, the Board has purchased insurance, either by contract with an insurance company, by participation in a local government risk pool, or use of a funded reserve which has been deemed to be the same as the purchase of insurance, which provides coverage – including coverage to its officers and employees – for the claims raised in this action. The Board thereby waived its governmental immunity on these claims.

9. Alternatively, should the Court determine that the City and/or the Board are entitled to governmental immunity, which Plaintiffs deny, then Plaintiffs have no adequate remedy at law and assert violations of Article I, § 19 of the North Carolina Constitution.

10. Subject matter jurisdiction over this action is conferred upon and vested in this Court under, *inter alia*, 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a), as more fully explained herein.

11. This Court has personal jurisdiction over the Defendants, as the City is a local municipal division of the State of North Carolina and upon information and belief, Officer Fattaleh is a resident and citizen of North Carolina. Moreover, the incident and conduct giving rise to the allegations in this Complaint occurred in North Carolina.

12. Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391, as more fully explained herein.

13. This is an action to recover substantial damages suffered by the minor L.G. as a consequence of Defendants' extreme and gross negligence that facilitated Officer Fattaleh's excessive use of force in handcuffing L.G. when he was seven years old, face down on the ground for almost 40 minutes.

## FACTUAL ALLEGATIONS

### *L.G.'s Special Needs*

14. At the age of six, L.G. was diagnosed with sensory processing disorders that resulted in "decreased self-regulation including difficulty with transitions, difficulty with adult directions or adult directed tasks, and sustaining an appropriate level of arousal leading to unsafe and aggressive behaviors."

15. At the age of seven, L.G. was formally diagnosed with autism spectrum disorder.

16. L.G. has significant impairments in his ability to communicate and express his needs and emotions, regulate his emotions or behavior, process or follow multi-step verbal directions, respond appropriately to external and internal stimuli, and to understand the consequences of his actions. L.G., therefore, required a safe school environment.

17. On July 31, 2018, the Board – by and through various of its employees –developed an initial Individualized Education Program ("IEP") for L.G.

18. Due to L.G.'s special needs and pursuant to his IEP, for the 2018-2019 school year, he was enrolled in a day treatment program located at Pressly and affiliated with non-profit behavioral and mental health provider Children's Hope Alliance ("CHA"). Day treatment services are provided in a classroom setting, with both educational and behavioral and mental health components. Day treatment providers are required to include specially trained behavioral health staff.

19. Pressley is a public school owned and operated by the Iredell County Board of Education. At Pressley, the day treatment program is located in a separate building from the school's other programs.

20. Upon information and belief, the Board approves, provides oversight of, and jointly operates the day treatment program at Pressly with CHA. Upon further information and belief, Day Treatment classrooms at Pressly are taught by a main public-school teacher who is an employee of the Board.

21. At all pertinent times, the City, the Statesville PD and the officers assigned to Pressly were aware that children at the day treatment program had special needs, and suffered from an array of developmental, mental health and behavioral issues, including autism. The City, the Statesville PD and its officers knew or should have known that children suffering from autism, as well as mental health and behavioral issues, can suffer from sensory processing disorders, struggle

to regulate their emotions, suffer from extreme anxiety, become more easily overstimulated, and have significant difficulty following multi-step directions or other instructions from an adult.

22. At all pertinent times, the Board and its employees were aware of L.G.'s diagnoses, mental health, and behavioral issues. Specifically, the Board was aware that L.G. struggled with transitions from one activity to another or from one location to another, which often resulted in L.G. exhibiting verbal and/or physical aggression. The Board was further aware that L.G. struggled to regulate his emotions, suffered from extreme anxiety, became easily overstimulated, and had significant difficulty following verbal multi-step directions or other instructions from an adult.

23. L.G. began school at Pressly on August 27, 2018.

24. L.G. was assigned to a classroom under the supervision and care of a special education teacher (hereinafter, "L.G.'s Special Education Teacher") and a behavioral health specialist ("L.G.'s Behavioral Health Specialist").

25. At all times pertinent to this Complaint, L.G.'s Special Education Teacher was an employee of the Board acting within the course and scope of her employment.

26. During the first couple weeks of school, L.G. experienced behavioral issues, particularly when he became overstimulated during transitions. Defendants were aware that transitions in L.G.'s day were a trigger for him.

### *Officer Fattaleh Unreasonably and Unlawfully Restrains and Harms L.G.*

27. On September 10, 2018, L.G.'s doctor prescribed him a new medication. Concerned about his potential reaction to the medication, L.G.'s mother notified Board employees, including, but not limited to, L.G.'s Special Education Teacher and other individuals working at Pressly of the medication change and that it may affect L.G.'s behavior at school the next day.

28. On September 11, 2018, there were a number of incidents in L.G.'s classroom involving other students, resulting in multiple transitions in and out of the classroom. Consequently, L.G. became "agitated and verbalized being stressed out."

29. L.G.'s Special Education Teacher and L.G.'s Behavioral Health Specialist cleared L.G.'s classroom of other students and transitioned L.G. to the school's "quiet room" to minimize stimulation and allow him to calm down in a safe environment. L.G.'s Special Education Teacher, L.G.'s Behavioral Health Specialist, and a teaching assistant (hereinafter, "Teaching Assistant") were all present in the "quiet room" with L.G.

30. At all times pertinent to this Complaint, Teaching Assistant was an employee of the Board acting within the course and scope of his employment.

31. Upon information and belief, a few minutes after L.G. was brought to the quiet room, Teaching Assistant and/or one of the other staff present with L.G. communicated to a school resource officer that they were okay and did not need assistance.

4

32. Upon information and belief, CHA's protocol "for any police involvement . . . requires that the [Day Treatment] team should be called to assist with the crisis; the team will call the supervisor and/or clinical director; and instructions will be provided as to the best option to be considered for client and family (this keeping all safety matters as a first concern for client, family, and team.)"

33. Upon information and belief, neither L.G.'s Special Education Teacher, L.G.'s Behavioral Health Specialist, nor the Teaching Assistant were concerned for their personal safety while restraining L.G. in the quiet room.

34. Upon information and belief, none of these trained specialists and teachers requested or required law enforcement intervention at any time for the events described herein.

35. After L.G. had been in the quiet room for several minutes, Officer Fattaleh abruptly entered the room, despite the fact that neither L.G.'s Special Education Teacher, L.G.'s Behavioral Health Specialist, nor the Teaching Assistant requested assistance from any school resource officer.

36. Upon information and belief, Officer Fattaleh purported to have seen L.G. spit on the floor, as Officer Fattaleh walked past the "quiet room."

37. L.G. did not look up, speak, or make any movement when Officer Fattaleh entered the room.

38. Immediately, Officer Fattaleh declared "he's mine now," and placed L.G. in handcuffs. L.G. did not resist.

39. Officer Fattaleh then forced L.G. into a kneeling position, with his arms pinned behind him and his hands tightly bound in handcuffs. He told L.G. that "if you spit on me, I'm going to put a hood on you."

40. Prior to handcuffing L.G., Officer Fattaleh did not ask the other staff present for any information about L.G., including any behavioral or mental health diagnoses or indeed what had been going on before he entered the "quiet room" or why he was in the "quiet room."

41. On September 11, 2018, Officer Fattaleh was aware that L.G. had special needs.

42. Despite seven-year-old L.G. bound by metal handcuffs, Officer Fattaleh repeatedly grabbed L.G.'s upper arms tightly from behind, forcing L.G. into an even more restricted position. Officer Fattaleh then forced L.G. to lay down face down on the floor, while handcuffed.

43. While restraining L.G., Officer Fattaleh asked L.G. if he had "ever been charged before." When L.G. quietly responded "no," Officer Fattaleh informed him "well, you're fixin' to." Officer Fattaleh then informed L.G.'s Special Education Teacher and Teaching Assistant, who were still in the quiet room, that L.G. was going to be charged for spitting.

44. Officer Fattaleh told seven-year old L.G.: "If you, my friend, are not acquainted with the juvenile justice system, you will be shortly."

5

45. After Officer Fattaleh handcuffed L.G. and forced him onto the floor, L.G.'s Special Education Teacher informed him that L.G. was seven years old, autistic, and simply "over-stimulated." Officer Fattaleh did not release L.G. or take any steps in response to this information.

46. Officer Fattaleh restrained seven-year old L.G. in metal handcuffs, on the ground, for over 38 minutes.

47. At another point during the 38 minutes that L.G. was handcuffed and face down, Officer Fattaleh placed his knees on L.G.'s back to hold him down. Officer Fattaleh stated: "Have you ever heard the term babysitter? I take that term literally, my friend."

48. At one point during the restraint, Officer Fattaleh violently torqued L.G.'s body to one side, causing L.G. to yell out in pain: "Ow! My knee! My knee! It really hurts!" Rather than altering L.G.'s position to alleviate the pain, Officer Fattaleh responded: "Yeah, it sucks, doesn't it?"

49. Officer Fattaleh then began discussing football and the weather with L.G.'s Special Education Teacher, while L.G. continued to be handcuffed and on the floor.

50. After being handcuffed for approximately 25 minutes, L.G. requested that Officer Fattaleh "let me go." In response, Officer Fattaleh said, "yeah, that's not gonna happen," and forcefully twisted L.G.'s body to one side, causing L.G. to begin crying hysterically.

51. L.G. sobbed and pleaded with Officer Fattaleh to "let me go, please!" to "please, stop it," and "get away from me!" But Officer Fattaleh continued to restrain L.G. in handcuffs, while L.G.'s Special Education Teacher and Teaching Assistant looked on.

52. While L.G. remained lying face down on the ground in handcuffs, crying, Officer Fattaleh causally took a statement from L.G.'s Special Education Teacher.

53. During that time, L.G.'s Special Education Teacher and Teaching Assistant, the Board employees responsible for L.G.'s care and safety, stood idly by and failed and refused to intervene, despite training and knowledge of the immense harm being done to L.G.

54. Upon information and belief, neither L.G.'s Special Education Teacher nor Teaching Assistant contacted any other school official, law enforcement official, or medical or mental health professional regarding L.G.'s treatment or Officer Fattaleh's misconduct.

55. At the time of these events, L.G. was just seven years old.

56. At the time of these events, L.G. stood only 4' 6" tall, and weighed just 80 lbs.

57. Upon information and belief, prior to and during the restraint, Officer Fattaleh knew that L.G. was in a classroom operated in conjunction with behavioral and mental health services, including that certain Board employees and CHA employees were specifically trained in adolescent mental and behavioral health.

58. It was not until L.G.'s mother arrived that L.G. was released from handcuffs. In fact, another officer released L.G. from the handcuffs, rather than Officer Fattaleh.

59. While L.G.'s mother cried at seeing her seven year-old son on the floor surrounded by police officers, Officer Fattaleh immediately informed L.G.'s mother that L.G. was going to be charged "with one count of assault, maybe two."

60. Despite his immediately preceding conduct, Officer Fattaleh stated to L.G.'s mother: "I know he needs help. And I know he's special needs. That's one of the reasons Officer Turner and I work here."

61. As L.G.'s mother picked him up, L.G. told her, "Mommy, they broke my arms."

62. Following the incident, L.G. was sent home from school with his mother.

63. L.G. was not suspended from school and no disciplinary action was taken against him by Pressly.

64. L.G.'s mother took L.G. to the emergency room of Davis Regional Medical Center, where he was diagnosed with "multiple abrasions, scratches and bruises from the incident" on his arms, back, abdomen, and wrists, and a "thumb print shape bruise on the inside of the right arm."

65. As a result of the trauma of being handcuffed and mistreated by Officer Fattaleh, L.G. suffered not only physical injuries to his body, but also post-traumatic stress disorder on top of his existing autism, mental illnesses, and behavioral issues.

66. On September 12, 2018, L.G. attempted to return to school at Pressly and CHA's Day Treatment Program, but became extremely anxious and agitated and wanted to go home. As a result of L.G.'s escalating issues, he was placed in restraints twice that day and ultimately sent home early. During one of those restraints, L.G.'s older brother heard L.G. screaming in the hallway, and received a disciplinary referral from the school when he attempted to reach L.G.

67. L.G. has not been able to return to school since September 12, 2018.

68. On September 12, 2018, L.G.'s team of Pressly and CHA staff indicated that a team meeting needed to occur "to discuss ideas to make [L.G.] feel safe in school again."

69. Upon information and belief, shortly after the events described herein, Officer Fattaleh was placed on administrative leave. Upon further information and belief, Officer Fattaleh resigned from the Statesville PD a few days later.

70. Upon information and belief, at the time of the incident the City and the Statesville PD did not have any policy or training concerning when a school resource officer could intervene in situations involving students in a school setting.

71. Upon further information and belief, prior to the incident, the City and the Statesville PD also did not have any policy or specific training for officers concerning interactions

with children with autism or special needs, despite staffing such officers in schools specifically for treating and educating such students.

72. As a direct result of the traumatic incident of restraint, L.G. "had a significant regression in regards to his anger, irritability[,] his explosive behavior [and his] physical aggression," and he has not been able to return to school since September 12, 2018, causing L.G.'s mother to have to homeschool him.

73. As a direct consequence of the restraint on September 11, 2018, L.G. received, and continues to receive, extensive medical treatment.

74. As a direct consequence of the restraint on September 11, 2018, Plaintiffs incurred and are incurring substantial damages, including, but not limited to, medical treatment, physical and psychological harm, and A.G.'s lost income as a result of being unable to work while caring for L.G.

75. As a direct consequence of Defendants' acts and omissions, L.G. suffered significant physical pain and continues to suffer from extraordinary mental anguish and emotional trauma.

76. Because Defendants acted in concert to cause L.G.'s harm, they should be held jointly and severally liable for all of Plaintiffs' damages.

### FIRST CAUSE OF ACTION
[U.S. Constitutional Violations – 42 U.S.C. § 1983 –Defendants City and Fattaleh]

77. The Plaintiffs incorporate by reference the allegations contained in all of the prior paragraphs.

78. Officer Fattaleh is liable in his individual capacity as an employee of the City.

79. This cause of action is brought against Defendants City and Officer Fattaleh, in his official and individual capacity, for excessive use of force. Officer Fattaleh used excessive force in effectuating an arrest and seizure of L.G., in violation of the Fourth Amendment's right to be free from unreasonable seizures.

80. Officer Fattaleh's use of force on L.G. was objectively unreasonable. Rather, Officer Fattaleh inflicted unnecessary and wanton pain and suffering upon L.G. by handcuffing him, face down on the floor of his school, for 38 minutes, despite the fact that L.G. was a seven year old boy with autism who did not pose any danger to himself or others. L.G.'s size and stature were also much smaller than Officer Fattaleh, such that he could not have reasonably been seen to pose a safety threat to Officer Fattaleh.

81. Officer Fattaleh's unreasonable use of force appears to have been solely in response to L.G. purportedly spitting on the ground.

82. Officer Fattaleh further inflicted unnecessary and wanton pain and suffering on L.G. by placing his knees into L.G.'s back, and twisting L.G. up and to one side such that he immediately cried out in pain.

83. Officer Fattaleh's use of force was not done in a good faith effort to maintain or restore discipline, as L.G. was being safely restrained by school staff at the time Officer Fattaleh intervened. Rather, Officer Fattaleh's use of force was malicious and sadistic, and for the very purpose of causing harm to L.G.

84. Officer Fattaleh's conduct violated clearly established statutory or constitutional rights of which a reasonable person in his position would have known.

85. The City failed to implement adequate policies with respect to the proper use and application of force, when to intervene in situations involving students in a school setting, and how to interact with and respond to children with autism and special needs.

86. The City further failed to adequately train and instruct officers such as Officer Fattaleh in the proper use and application of force, in when to intervene in situations involving students in a school setting, and how to interact with and respond to children with autism and special needs.

87. Defendants' actions and omissions were made under color of state law.

88. As a direct and proximate result of Officer Fattaleh's excessive use of force described in more detail above, the minor Plaintiff suffered severe and permanent psychological injuries and was forced to endure extreme pain, suffering, and emotional distress and mental anguish together with a total deprivation of his rights guaranteed him by the Constitution of the United States of America, including but not limited to, his right under the Fourth Amendment to be free from unreasonable seizures.

## SECOND CLAIM FOR RELIEF
[Negligence and Gross Negligence –Defendants City and Fattaleh]

89. Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth.

90. At all times pertinent to this Complaint, the City and Officer Fattaleh owed a duty of reasonable care to L.G.

91. Officer Fattaleh's misconduct described herein is imputed to the Statesville PD under agency principles, vicarious liability, and the doctrine of *respondeat superior*.

92. Officer Fattaleh knew or should have known that L.G. suffered from autism and other behavioral and mental health conditions.

93. Officer Fattaleh knew or should have known that L.G. did not possess the same or similar capacity, discretion, knowledge or experience as other children of his age.

94. The City and Officer Fattaleh systematically breached their legal duties to Plaintiffs and were negligent at the times and places as described above in great detail, and distilled to at least the following particulars:

   a. Officer Fattaleh used excessive force in handcuffing L.G. face down on the ground for 38 minutes;

   b. Officer Fattaleh used excessive force in manhandling L.G., placing his knees in L.G.'s back, and violently twisting L.G.'s body so that he cried out in pain;

   c. Defendants failed to account in any reasonable way for L.G.'s autism, behavioral issues, and mental health conditions;

   d. Defendants failed to take into consideration the well-being and safety of L.G.;

   e. Defendants failed to implement appropriate safety precautions and measures to ensure the safety of L.G.;

   f. The City failed to implement policies, procedures, and practices for when school resource officers should respond to a situation involving students in a school setting;

   g. The City failed to implement policies, procedures, and practices for how officers should respond to children with autism;

   h. The City failed to properly supervise, train, and monitor Officer Fattaleh; and

   i. Defendants acted wantonly, with conscious or reckless disregard for the rights and safety of L.G.

95. The negligent acts and omissions of Defendants, as described hereinabove, were direct and proximate causes of L.G.'s injuries and Plaintiffs' damages.

96. The acts and omissions of Defendants, as described hereinabove, were willful, wanton and/or reckless, and amount to gross negligence.

97. Defendants' actions and omissions amount to a conscious and intentional disregard and indifference to the rights and safety of L.G.

98. The acts and omissions of Defendants directly and proximately caused L.G.'s injuries, medical expenses (both current and throughout the remainder of his life), pain and suffering, post-traumatic stress disorder, loss of future income, and reduction in the quality of his life.

99. Defendants are liable to Plaintiffs for their negligent and/or grossly negligent acts and omissions in an amount to be proven at trial, but believed to be substantially in excess of $25,000.00, plus interest.

100. Individually and as the natural mother of minor Plaintiff L.G., A.G. was and remains responsible for obtaining and paying for L.G.'s necessary medical treatment and expenses resulting from his injuries suffered on September 11, 2018.

101. As a result of Defendants' negligence and gross negligence, A.G. has also been forced to quit her job and remain home to care for and homeschool L.G., incurring significant lost wages and damages.

102. Pursuant to N.C.G.S. § 1D-1, *et seq.*, Plaintiffs are entitled to recover punitive damages to punish Defendants for their wrongful conduct and to discourage them and others similarly situated from engaging in similarly wrongful future conduct.

## THIRD CAUSE OF ACTION
### [Negligent Hiring, Negligent Supervision, Negligent Retention, and Gross Negligence – the City]

103. The Plaintiffs incorporate by reference the allegations contained in all of the prior paragraphs.

104. Officer Fattaleh was an employee of the City at all times relevant to this Complaint.

105. The City had a duty to exercise ordinary and reasonable care in the screening, hiring, training, retention, and supervision of its employees, including Officer Fattaleh.

106. The City breached such duties.

107. Specifically, as alleged herein, the City failed to properly train and supervise Officer Fattaleh with respect to when to intervene in situations involving students in a school setting, and how to interact with and respond to children with autism and special needs.

108. The City's actions and inactions were grossly negligent and/or committed in reckless disregard for L.G.'s rights.

109. As a direct and proximate result of the City's negligent hiring, supervision, and retention of Officer Fattaleh, the Plaintiffs have been damaged in excess of $25,000.00.

## FOURTH CLAIM FOR RELIEF
### [Negligence and Gross Negligence –Defendant Board]

110. Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth.

111. At all times pertinent to this Complaint, the Board owed a duty of reasonable care to L.G.

112. L.G.'s Special Education Teacher and Teaching Assistant misconduct described herein is imputed to the Board under agency principles, vicarious liability, and the doctrine of *respondeat superior*.

113. L.G.'s Special Education Teacher and Teaching Assistant knew that L.G. suffered from autism and other behavioral and mental health conditions.

114. L.G.'s Special Education Teacher and Teaching Assistant knew or should have known that L.G. did not possess the same or similar capacity, discretion, knowledge or experience as other children of his age.

115. The Board systematically breached its legal duties to Plaintiffs and was negligent at the times and places as described above in great detail, and distilled to at least the following particulars:

   a. Failed to intervene when Officer Fattaleh used excessive force and manhandled L.G., including when Officer Fattaleh handcuffed L.G. for almost 40 minutes, placed his knees in L.G.'s back, and violently twisted L.G.'s body so that he cried out in pain;

   b. Failed to keep L.G. safe from harm;

   c. Failed to account in any reasonable way for L.G.'s autism, behavioral issues, and mental health conditions;

   d. Failed to take into consideration the well-being and safety of L.G.;

   e. Failed to implement appropriate safety precautions and measures to ensure the safety of L.G.;

   f. Failed to implement policies, procedures, and practices for how school employees should respond to, and when they should intervene in, the use of excessive force by school resource officers involving students in a school setting;

   g. Failed to implement policies, procedures, and practices for how officers should respond to children with autism;

   h. Failed to properly supervise, train, and monitor L.G.'s Special Education Teacher and Teaching Assistant; and

   i. Acted wantonly, with conscious or reckless disregard for the rights and safety of L.G.

116. The negligent acts and omissions of the Board, as described hereinabove, were direct and proximate causes of L.G.'s injuries and Plaintiffs' damages.

117. The acts and omissions of the Board, as described hereinabove, were willful, wanton and/or reckless, and amount to gross negligence.

118. The Board's actions and omissions amount to a conscious and intentional disregard and indifference to the rights and safety of L.G.

119. The acts and omissions of the Board directly and proximately caused L.G.'s injuries, medical expenses (both current and throughout the remainder of his life), pain and suffering, post-traumatic stress disorder, loss of future income, and reduction in the quality of his life.

120. The Board is liable to Plaintiffs for its negligent and/or grossly negligent acts and omissions in an amount to be proven at trial, but believed to be substantially in excess of $25,000.00, plus interest.

121. Individually and as the natural mother of minor Plaintiff L.G., A.G. was and remains responsible for obtaining and paying for L.G.'s necessary medical treatment and expenses resulting from his injuries suffered on September 11, 2018.

122. As a result of Defendants' negligence and gross negligence, A.G. has also been forced to quit her job and remain home to care for and homeschool L.G., incurring significant lost wages and damages.

123. Pursuant to N.C.G.S. § 1D-1, *et seq.*, Plaintiffs are entitled to recover punitive damages to punish the Board for their wrongful conduct and to discourage them and others similarly situated from engaging in similarly wrongful future conduct.

## FIFTH CAUSE OF ACTION
**[Intentional/Reckless Infliction of Emotional Distress –Defendants the City and Fattaleh]**

124. The preceding paragraphs are realleged and incorporated herein as if fully set forth.

125. Officer Fattaleh's conduct was extreme and outrageous in that it exceeded all bounds usually tolerated by decent society.

126. Specifically, as alleged herein, Officer Fattaleh used violent, excessive force against L.G., a seven year old autistic student who weighed approximately fifty-percent less than Officer Fattaleh.

127. Officer Fattaleh unnecessarily placed L.G. in handcuffs on the floor, for 38 minutes.

128. A.G. witnessed L.G. in handcuffs on the floor, and her son's distress in that moment and the days, weeks, and months that followed.

129. Officer Fattaleh's conduct was intended to cause, or was recklessly indifferent to the likelihood that it would cause severe emotional distress to Plaintiffs.

130. Officer Fattaleh's actions described herein are imputed to the City under the doctrine of *respondeat superior* because at all pertinent times, Officer Fattaleh was acting in the course and scope of his employment with the City.

131. Defendants' conduct in fact caused severe emotional distress to Plaintiffs.

132. As a direct and proximate result of Defendants' intentional and/or reckless infliction of severe emotional distress, Plaintiffs suffered damages in an amount to be determined at trial, for which all Defendants are jointly and severally liable.

## SIXTH CAUSE OF ACTION
### [Negligent Infliction of Emotional Distress – All Defendants]

133. The preceding paragraphs are realleged and incorporated herein as if fully set forth.

134. Defendants knew or should have known, and it was reasonably foreseeable that their conduct would cause Plaintiffs' severe emotional distress.

135. Defendants' actions and inactions were negligent and caused severe emotional distress to Plaintiffs.

136. Officer Fattaleh's actions described herein are imputed to the City under the doctrine of *respondeat superior* because at all pertinent times, Officer Fattaleh was acting in the course and scope of his employment with the City.

137. L.G.'s Special Education Teacher and Teacher Assistant's actions described herein are imputed to the Board under the doctrine of *respondeat superior* because at all pertinent times, L.G.'s Special Education Teacher and Teaching Assistant were acting in the course and scope of their employment with the Board.

138. As alleged above, it was reasonably foreseeable that Defendants' numerous failures and breaches of the standard of care would result in extreme harm to the Plaintiffs.

139. Despite the absence of policies and training concerning when school resource officers could intervene with students in a school setting, or how to respond to children with autism and special needs, the City and Board allowed Officer Fattaleh to work at Pressly in a position of power and authority over vulnerable students with special needs. The City and Board's conduct fell below the applicable standard of care and was reasonably likely to lead to and cause severe emotional distress to Plaintiffs.

140. Officer Fattaleh's negligent conduct, described above, occurred while he was an employee of the City. As a public employee, he is not entitled to governmental immunity.

141. Among other failures, the Board negligently failed to maintain adequate policies and training concerning when and how school employees should respond to, and intervene in, the excessive use of force by school resource officers against students on school grounds.

142. As a direct and proximate result of Defendants' actions and inactions, negligently inflicting emotional distress upon Plaintiffs, Plaintiffs suffered damages in an amount to be established at trial, for which Defendants are jointly and severally liable.

### SEVENTH (ALTERNATIVE) CAUSE OF ACTION
### [Assault & Battery – Defendants City and Officer Fattaleh, in his Official and Individual Capacity]

143. The preceding paragraphs are realleged and incorporated herein as if fully set forth.

144. Alternatively, Officer Fattaleh threatened L.G. with physical harm by an act or display of force.

145. Alternatively, Officer Fattaleh caused unwanted bodily contact with L.G.

146. Specifically, Officer Fattaleh made a show of force and handcuffed, pinned to the ground, sat on, and twisted the arms of minor Plaintiff L.G.

147. The bodily contact described herein actually offended and harmed L.G.

148. The bodily contact described herein occurred without L.G.'s consent.

149. Officer Fattaleh's actions caused L.G. to have a reasonable apprehension that further harmful and offensive contact to his person was imminent.

150. Officer Fattaleh's actions described herein are imputed to Defendant City under the doctrine of *respondeat superior* because at all pertinent times, Officer Fattaleh was acting in the course and scope of his employment with the City.

151. As a direct and proximate result of Officer Fattaleh's assault, Plaintiffs suffered damages in an amount to be proven at trial, for which Defendants City and Officer Fattaleh, individually and in his official capacity, are jointly and severally liable

### EIGHTH CAUSE OF ACTION
### [Punitive Damages – All Defendants]

152. The preceding paragraphs are realleged and incorporated herein as if fully set forth.

153. Officer Fattaleh's actions as alleged hereinabove constitute willful and wanton conduct, as set forth in N.C.G.S. §1D, and are imputed to the City through the doctrines of vicarious liability and *respondeat superior*.

154. The Board's actions and inactions, by and through its agents and employees, as alleged hereinabove constitute willful and wanton conduct, as set forth in N.C.G.S. §1D, and are imputed to the City through the doctrines of vicarious liability and *respondeat superior*.

155. Pursuant to N.C.G.S. § 1D, Plaintiffs are entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be determined by a jury, in an amount to be determined at trial.

## NINETH (ALTERNATIVE) CAUSE OF ACTION
**[Violation of North Carolina Constitution – Defendants City, Board, and Officer Fattaleh, in his Official Capacity]**

156. The preceding paragraphs are realleged and incorporated herein as if fully set forth.

157. Alternatively, should the Court determine that the City and/or the Board is entitled to governmental immunity, which Plaintiffs deny, then Plaintiffs have no adequate remedy at law and assert the following Constitutional violations pursuant to the laws of the State of North Carolina.

158. The City and the Board violated Article I, § 19 of the North Carolina Constitution by depriving the minor Plaintiff of his bodily integrity and thereby depriving him of his liberty interests and privileges.

159. The City and the Board acted under color of state law to deprive the minor Plaintiff of his rights, privileges, and immunities secured by Article I, § 19 of the North Carolina Constitution.

160. As a result of the City's and the Board's violations of the North Carolina Constitution and deprivation of the minor Plaintiff's rights, the Plaintiffs have suffered significant damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

1. Award Plaintiffs damages against Defendants, jointly and severally, for their negligence and gross negligence, and negligent infliction of emotional distress, in an amount to be proven at trial;

2. Award Plaintiffs damages against the City and Fattaleh, jointly and severally, for their violation of 42. U.S.C. § 1983 and intentional infliction of emotional distress, in an amount to be proven at trial;

3. Award Plaintiffs damages against the City for negligent hiring, supervision, and retention;

4. Grant Plaintiffs punitive damages against Defendants, jointly and severally, for their malicious, and willful and wanton conduct, pursuant to N.C. Gen. Stat. §§ 1D-1, *et seq*;

5. In the alternative, award Plaintiffs damages against the City and Officer Fattaleh, individually and in his official capacity, for assault and battery in an amount to be proven at trial;

6. In the alternative, award Plaintiffs damages against the City and/or the Board for violation of Article I, § 19 of the North Carolina Constitution, as Plaintiffs have no adequate remedy at law;

7. That Plaintiffs have and recover their attorneys' fees to the fullest extent allowed by law;

8. Tax the costs of this action against Defendants;

9. That Plaintiffs have a trial by jury on all issues so triable; and

10. Grant Plaintiffs any other remedy which this Court deems just and equitable under the circumstances.

This the 9th day of October 2020.

**JAMES, McELROY & DIEHL, P.A.**

/s/ J. Alexander Heroy
J. Alexander Heroy (State Bar # 39752)
Jennifer M. Houti (State Bar # 45442)
525 N. Tryon Street, Ste. 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Email: aheroy@jmdlaw.com;
  jhouti@jmdlaw.com
*Attorneys for Plaintiffs*