| | |
|---|---|
| A. G.,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**THE CITY OF STATESVILLE**<br>**MICHAEL FATTALEH**<br>**WILLIAM MANNERS**<br>**IREDELL-STATESVILLE**<br>**BOARD OF EDUCATION**<br>**COLLEEN GUERIN**<br>**MICHAEL FATTALEH**<br>**(OFFICIAL CAPACITY),**<br><br>    **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Colleen Guerin a/k/a Colleen Flood ("Guerin") and William Manners' ("Manners") Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Under F.R.C.P. 12(b)(6) (Doc. No. 44) and Defendant Iredell-Statesville Board of Education's ("Board") Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 39). The Court has carefully considered the motions, the parties' related briefs, the Amended Complaint (Doc. No. 24), and all other relevant portions of the record.

With due regard for the applicable standards of review of motions to dismiss pursuant to Rule 12, the Court finds that Plaintiff has, at this early stage of the case, adequately pled her claims against Guerin and Manners. However, the Court finds that the Board is immune from suit regarding the state tort claims (Plaintiff's Fourth, Sixth, and Tenth Causes of Action) and that

Plaintiff's Section 1983 and other Federal statutory claims cannot proceed as alleged (Plaintiff's Eleventh, Twelfth and Thirteenth Causes of Action).

Accordingly, for the reasons discussed below, the Court will **DENY** Guerin and Manners' motion to dismiss (Doc. No. 44) and **GRANT** the Board's motion to dismiss (Doc. No. 39).

## I.     LEGAL STANDARD

### A.     Subject Matter Jurisdiction under Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed. *Chris v. Tenet*, 221 F.3d 648, 655 (4th Cir. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Therefore, whether the Court has jurisdiction over the subject matter of a case must be considered before addressing its merits. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B.     Personal Jurisdiction under Rule 12(b)(2)

When personal jurisdiction is properly challenged under Rule 12(b)(2), the burden is on the plaintiff ultimately to prove the Court's jurisdiction over the defendants by a preponderance of the evidence. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 396 (4th Cir. 2003). However, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing

of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In deciding whether the plaintiff has made the requisite showing, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff. *Id.*

## C. Failure to State a Claim under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570*; Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding

the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II.     FACTS AND PROCEDURAL HISTORY

As noted, for purposes of ruling on these motions, the Court accepts as true all well-pled facts and draws all reasonable inferences in Plaintiff's favor. Accordingly, the following version of the facts is drawn solely from the Amended Complaint, Doc. No. 24.

This matter arises out of an incident that occurred on September 11, 2018 during which L.G., a seven year old child with disabilities, was handcuffed by a School Resource Officer, Michael Fattaleh ("Fattaleh") at the Pressly Alternative School ("Pressly") in Iredell County, North Carolina. Doc. No. 24 at ¶¶ 2, 4, 31, 41. L.G.'s disabilities include autism, sensory processing disorders, mental disabilities, learning disabilities, and behavioral disabilities, and he also has difficulty with self-regulation and transitions. *Id*. at ¶¶ 2, 15. Plaintiff A.G., who is L.G.'s Mother, is prosecuting this action individually and as L.G.'s parent and legal guardian. *Id*. at ¶ 1. Plaintiff filed the First Amended Complaint, (*id*.), against The City of Statesville ("City"); Fattaleh, in his individual capacity; the Board; Guerin, in her individual capacity; and Manners, in his individual capacity.[1]   At the time of the incident, Fattaleh was a Statesville Police Department officer and city employee assigned to Pressly, *id*. at ¶ 4, where L.G. was a student. Pressly is owned and operated by the Board, *id*. at ¶ 5, and Guerin, L.G.'s special education teacher, and Manners, a teaching assistant, were both employed by the Board at Pressly at the time of the incident. Id. at ¶¶ 6, 7.

---

[1] The City and Fattaleh have not filed motions to dismiss so the Court will not address the claims against them in this Order.

Consistent with his disabilities, L.G. was enrolled in a day treatment program at Pressly which included behavioral and mental health components in addition to educational instruction, and he had an Individualized Education Program ("IEP"). *Id*. at ¶¶ 18, 19. On the day of the incident, L.G. became overstimulated due to "a number of incidents in L.G.'s classroom involving other students, resulting in multiple transitions in and out of the classroom." *Id*. at ¶ 31. L.G. was moved to the school's "quiet room," accompanied by Guerin and Manners, to allow him to calm down. *Id*. at ¶ 32. L.G. was not considered to be a threat to anyone's personal safety and neither Guerin nor Manners requested assistance from law enforcement; rather, they "communicated to a school resource officer that they were okay and did not need assistance." *Id*. at ¶¶ 34, 37.

Shortly after L.G. was put in the "quiet room," Fattaleh entered the room and put L.G. into handcuffs, allegedly based on L.G. spitting on the floor. *Id*. at ¶¶ 36, 38, 41. Fattaleh also forced L.G. to lie down on the floor, repeatedly grabbed his upper arms tightly, violently twisted L.G.'s body, and kneeled on L.G.'s back over the course of 38 minutes. *Id*. at ¶¶ 45, 49, 50. Fattaleh did not release L.G. despite being informed of his disabilities, L.G. crying hysterically, indicating that he was in pain[2], and begging to be let go. Throughout the time L.G. was restrained, Fattaleh also

---

[2] *See* Doc. No. 24 at ¶ 51 ("At one point during the restraint, Officer Fattaleh violently torqued L.G.'s body to one side, causing L.G. to yell out in pain: "Ow! My knee! My knee! It really hurts!" … Officer Fattaleh responded: 'Yeah, it sucks, doesn't it?'").

threatened L.G. several times.[3]  L.G. allegedly suffered post-traumatic stress disorder[4]  from his treatment by Officer Fattaleh as well as physical injuries.[5]

Plaintiffs bring claims against the Board and Guerin and Manners asserting negligence and gross negligence (claim 4) and negligent infliction of emotional distress (claim 6). (Doc. No. 24). Plaintiffs also assert claims of negligent hiring, negligent supervision, negligent retention, and gross negligence (claim 10) and constitutional violations of 42 U.S.C. § 1983 (claim 11) against the Board and claims of discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (claim 12), and discrimination in violation of § 504 of the Rehabilitation Act (claim 13), against the Board and the City.

In their respective motions to dismiss, Defendants contend that the Amended Complaint should be dismissed on multiple grounds. The Board argues that this Court lacks jurisdiction to determine the negligence claims against the Board due to the Board's governmental immunity and the absence of liability insurance covering the claims. Additionally, the Board argues that Plaintiffs fail to state a claim upon which relief may be granted regarding the negligence and Federal statutory claims. Defendants Guerin and Manners similarly argue that Plaintiffs negligence claims

---

[3] *See* Doc. No. 24 at ¶¶ 42 (telling L.G. "if you spit on me, I'm going to put a hood on you"), 46 (informing L.G. and his teachers that L.G. was going to be criminally charged), 47 (telling L.G. "If you, my friend, are not acquainted with the juvenile justice system, you will be shortly"), 50 (stating while kneeling on L.G. "Have you ever heard the term babysitter? I take that term literally, my friend").

[4] *See* Doc. No. 24 at ¶ 68.

[5] *See* Doc. No. 24 at ¶¶ 64 (stating that when picked up by his mother, L.G. said "Mommy, they broke my arms"), 67 (describing L.G.'s diagnoses at the hospital following the incident which included "multiple abrasions, scratches and bruises" as well as "a thumb print shape bruise on the inside of the right arm").

against them should be dismissed because Plaintiffs fail to plead adequate facts to support a recognizable duty or establish that Fattaleh's actions were reasonably foreseeable.

## III.    DISCUSSION

### A.    Claims Against Defendants Guerin and Manners

Defendants Guerin and Manners move to dismiss all of Plaintiffs' negligence claims for failure to state a claim under 12(b)(6). For a negligence complaint "[t]o withstand a motion to dismiss" it "must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Lambeth v. Media General, Inc.*, 167 N.C. App. 350, 352 (2004) (quoting *Sterner v. Penn,* 159 N.C. App. 626, 629, 583 S.E.2d 670, 673 (2003)).

The applicable standard of care is well established. "[A] teacher is held to the same standard of care which a person of ordinary prudence, charged with the teacher's duties, would exercise in the same circumstances." *Foster v. Nash-Rocky Mt. County Bd. of Educ.*, 665 S.E.2d 745, 748 (N.C. App. 2008) (quoting *Payne v. N.C. Dept. of Human Resources*, 382 S.E.2d 449, 451 (N.C. App. 1989)). Additionally, although "[i]t is true that the amount of care due a student increases with the student's immaturity, inexperience, and relevant physical limitations," the standard "remains that of the exercise of ordinary prudence given the *particular circumstances* of the situation." *Payne*, 382 S.E.2d at 452. (emphasis in original). Thus, the Court must determine whether Plaintiffs' have adequately alleged that Defendants Guerin and Manners did not exercise ordinary care in the circumstances of L.G.'s incident with Officer Fattaleh.

First, these Defendants[6] argue that L.G.'s teachers owed no duty at all to L.G. because in North Carolina "there is neither a duty to control the actions of a third party, nor to protect another from a third party." (Doc. No. 49 at 2). However, the Court is unpersuaded that those principles fully apply to Fattaleh's actions as an alleged "third party" in this situation.[7] Unlike the two cases cited by Defendants regarding truly unaffiliated third parties, Defendants Guerin and Manners and Fattaleh all had roles at and worked at the school together, even though they may have been respectively employed separately by the Board and the City. For example, in *Scadden v. Holt,* 733 S.E.2d 90, 91 (N.C. App. 2012), the plaintiff (a deputy sheriff) argued that the Defendant (an EMS worker) had an obligation to control one of EMS's patients (the third party). Similarly, in *King v. Durham County Mental Health Developmental Disabilities and Substance Abuse Authority*, 113 N.C. App. 341, 342 (1994), the plaintiff administrator of his wife's estate argued that the Defendants (various county and community agencies) had an obligation to control one of their third-party patients, who killed the plaintiff's wife. Clearly, the third parties in these situations, both unrelated patients who had no connection to the defendant organizations or employees, were not working with the defendants in the same way that Fattaleh worked with Guerin and Manners at the school.

---

[6] The Board joins Guerin and Manners in their substantive arguments against Plaintiff's negligence claims; however, because the Court finds that the Board (unlike the teachers sued in their individual capacities) has governmental immunity these issues will be addressed only in the context of Plaintiff's claims against Guerin and Manners.

[7] The Court need not and does not reach at this time the issue of whether the teachers and/or the Board had a "special relationship" with a seven year old autistic student entrusted to their care such that they had a heighted duty to protect L.G. *See Hedrick v. Rains,* 121 N.C. App. 466, 469, *aff'd per curiam,* 344 N.C. 729, 477 S.E.2d 171 (1996); *Scadden v. Holt*, 222 N.C. App. 799, 802 (2012).

Relatedly, Guerin and Manners argue that they had no duty to "interfere" with a police officer in the course of his duties and, indeed, any effort by them to "interfere" with Officer Fattaleh may have resulted in obstruction of justice charges. (Doc. No. 45 at 6). However, Defendants overstate the Plaintiff's allegations and the nature of the "interference" which arguably was required to satisfy their duty of care to L.G.. Plaintiff does not contend that Guerin or Manners was required to physically intercede against Fattaleh. Rather, she argues that the teachers should have asked Fattaleh to stop harming the child, not handcuff him, seek help from other officers or school administrators and/or take other actions short of physical involvement. *See* Doc. No. 48 at 2. In other words, Plaintiff argues that the teachers should have done more than simply inform the Officer that L.G. was disabled and chat about football and other unrelated topics.[8] Moreover, simply criticizing Officer Fattaleh's conduct or communicating with him in more detail about L.G.'s disabilities and the effect of his actions or reporting Fattaleh's conduct to others would not have resulted in obstruction of justice charges against Defendants.[9] Accordingly, the Court finds that the involvement of Officer Fattaleh, standing alone, does not relieve Defendants Guerin and Manners of their duty of ordinary care to L.G., under all the circumstances, which, of course includes the involvement of a police officer.

---

[8] Defendants repeatedly characterize their conduct during the incident as an effort to "de-escalate" the situation, but that allegation is not found in the Amended Complaint, and the Court cannot properly infer such positive motives – which may of course ultimately be found to be accurately stated - to Defendants on a motion to dismiss. On the contrary, the Court must make the most favorable inference to Plaintiff, which is that the Defendants' conduct reflects disinterest, acceptance of Officer Fattaleh's behavior and/or a lack of care.

[9] *See State v. Burton*, 108 N.C. App. 219, 226 (1992) (quoting *State v. Allen,* 14 N.C. App. 485, 491 (1972)) ("Merely remonstrating with an officer in behalf of another, or criticizing an officer while he is performing his duty, does not amount to obstructing, hindering, or interfering with an officer.").

Finally, Defendants generally contend that they cannot be found liable on Plaintiff's negligence claims because Officer Fattaleh's conduct was not "reasonably foreseeable." *See James v. Charlotte-Mecklenburg Board of Education*, 60 N.C. App. 642, 643-44 (1983) (teacher found not liable for negligence when a student injured a fellow student while the teacher was not in the classroom). However, this case does not appear to turn on any issue of "foreseeability." Unlike the teacher in *James*, Defendants Guerin and Manners were in the room with L.G. and able to see Officer Fattaleh's conduct as it occurred. Therefore, any harm to L.G. as a consequence of their alleged negligence was clearly "foreseeable" by the teachers – indeed, to the extent it happened they witnessed it in real time. Of course, the fact that the harm was "foreseeable" does not answer the question of the scope of the teachers' duty to protect L.G. or whether the duty was breached. However, Defendants are not entitled to defeat Plaintiff's negligence claims on the ground that the harm from their lack of taking further action was "unforeseeable."

As discussed further below, the Court finds that it would be inappropriate on this motion to dismiss for the Court to decide as a matter of law that Guerin and Manners' actions were either negligent or not negligent. The Court finds instructive a case cited by Defendants, *E.C. v. Cty. of Suffolk*, 882 F. Supp. 2d 323, 333-37 (E.D.N.Y. 2012), albeit in different ways than those suggested by Defendants. *See* Doc. No. 45 at 6. In *E.C.*, a disabled eleven-year-old student was restrained by school security and briefly[10] handcuffed after engaging in disruptive and dangerous behavior. *Id*. The student was released after his mother arrived, and he was not charged. *Id.* The student then brought claims against the principal and teacher's assistant, who were present during the incident, for negligent infliction of emotional distress and several 42 U.S.C. § 1983 violations.

---

[10] E.C. was handcuffed for approximately 5 minutes.

*Id.* at 341. Although Guerin and Manners, like the teachers in *E.C.*, might arguably be considered "spectators" and "did not directly participate in the actual seizure or restraint," the Court finds that there are several significant differences between *E.C.* and this case.

First, and perhaps most significantly, *E.C.* is a ruling on a motion for summary judgment not a motion to dismiss. *Id.* at 329. When evaluating a motion for summary judgment, discovery has generally occurred and the Court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in order to determine if there are genuine issues as to material facts. *Id.* at 343 (quoting *Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). A motion to dismiss, however, looks only at the sufficiency of the complaint, not the factual merits. Thus, the legal standard, available information, and manner of evaluation was materially different in *E.C.*

Second, the claims addressed by the court in E.C. were claims under Section 1983, not common law negligence torts, as in this action. *Id.* at 340. This distinction is significant because in *E.C.* the question was whether the plaintiff had been deprived of a federal right and whether the person depriving the plaintiff acted under color of law. *Id.* at 344. On these negligence claims, the Court need not consider those constitutional issues and need only address the duty of care owed to L.G. Finally, the court found in *E.C.* that the restraint was "reasonable" and "necessary" and that the "plaintiffs cannot establish that these two defendants failed to right a wrong." *Id.* at 353. Plaintiff E.C. acted violently toward himself and others, and the court determined that seizure of him was therefore justified. *Id.* at 323. Here, L.G. was sitting in a quiet room and allegedly not endangering anyone. Thus, while the *E.C.* court found it was not necessary for the defendant teachers to intervene in the restraint because the restraint was lawful, this Court cannot presently

make the same finding in this case, particularly at the matter's earliest stage. Accordingly, *E.C.*, while containing facts that on the surface are similar, is readily distinguishable and indeed counsels in favor of denying Defendants' motion to dismiss.

In sum, the Court finds that Plaintiff has adequately pled that Guerin and Manners were negligent in failing to do more to protect L.G.. As discussed above, teachers are held to an ordinary standard of care under all the particular circumstances. It is not reasonably disputed that Defendants had at least some duty to protect L.G. *See Payne*, 95 N.C. App. at 313–14 (a "teacher must act with ordinary prudence and employ 'the level of care or vigilance ... commensurate with the degree of danger inherent in a particular situation.'" (citation omitted)). However, the full scope of that duty – and whether it was breached – depends on all the specific facts and circumstances of the incident, including, but not limited to, L.G.'s very young age, his disabilities, Officer Fattaleh's involvement and the availability of school administrators and other officers who might have interceded if asked. Thus, the Court cannot at this stage of the case determine (as a matter of law) that Defendants did not breach their duty to L.G., as Plaintiff has at least "plausibly" alleged. Whether or not the issue can be decided at summary judgment remains to be seen, but, applying the appropriate standard, the Court must deny Guerin and Manners' Motion to Dismiss.

## B. Claims Against the Board

Plaintiffs allege six causes of action against the Board: Negligence and Gross Negligence (Fourth Cause of Action); Negligent Infliction of Emotional Distress (Sixth Cause of Action); Negligent Hiring, Negligent Supervision, Negligent Retention, and Gross Negligence (Tenth Cause of Action); violation of 42 U.S.C. § 1983 (Eleventh Cause of Action); violation of Title II

of the Americans with Disabilities Act (Twelfth Cause of Action); and violation of Section 504 of the Rehabilitation Act (Thirteenth Cause of Action).

### 1.      Negligence Claims

The Board's first and primary argument[11] against Plaintiff's negligence claims is that the claims (Nos. 4, 6 and 10) should be dismissed because the Board is entitled to governmental immunity on Plaintiff's tort claims. Where applicable, governmental immunity bars a court from jurisdiction over a complaint's causes of action subject to immunity. *Myers v. McGrady*, 360 N.C. 460, 465 n.2 (2006); *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 525 (1991). Local boards of education are expressly entitled to the defense of governmental immunity under North Carolina law, *see* N.C. Gen. Stat. § 115C-42 (1985), because "a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." *Magana v.Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148 (2007) (citation omitted); *see also, e.g., Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 336 n.3 (2009) (as a "county agency" a local board of education is entitled to governmental immunity); *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 137 N.C. App. 680, 685 (2000).

Plaintiff does not dispute that the Board may be protected by governmental immunity; rather, she argues (accurately) that "governmental immunity" is not "absolute" and is "deemed to have been waived" if the Board purchases liability insurance. So, whether or not the Board is entitled to immunity from Plaintiff's negligence claims depends on whether the Board is insured

---

[11] As noted above, the Board joins Guerin and Manners in their substantive arguments against Plaintiff's negligence claims; however, the Court need not separately address those arguments here.

for those claims. As discussed below, the Court finds that the Board is not insured for Plaintiff's negligence claims and thus retains its governmental immunity.

With respect to insurance, the Board has entered into a coverage agreement with the North Carolina School Boards Trust ("NCSBT"),[12] *see* Doc. No. 47-1, which in turn procured excess insurance for certain claims resulting in damages between $150,000 and $1,000,000.[13] Accordingly, the Board's immunity may be waived to the extent of that excess coverage. *See Lucas v. Swain County Bd. of Educ.*, 154 N.C. App. 357, 363 (2002). However, "such immunity is waived only to the extent [that the Board] is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. Therefore, the Board retains immunity to the extent that an exclusion in the policy or agreement exists and applies to the claims. *See, e.g., Patrick v. Wake County Dept. of Soc. Servs.*, 188 N.C. App. 592, 596 (2008) ("A governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] insurance policy.").

---

[12] Under North Carolina law, a local school board does not waive governmental immunity simply by participating in the NCSBT because participation in the NCSBT does not qualify as a purchase of "insurance" under the statute. *See, e.g., Craig v. New Hanover Cnty. Bd. of Educ.*, 185 N.C. App. 651, 654 (2007), *rev'd on other grounds*, 363 N.C. at 335-36; *see also Barrett v. Board of Educ. Of Johnston County*, 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014) (holding that school board had not waived immunity where sole source of potential insurance coverage was through NCSBT and court therefore lacked jurisdiction to consider plaintiffs' tort claim).

[13] NCSBT purchased a Reinsurance Policy from Safety National Casualty Corporation ("Reinsurance Policy"). Doc. No. 47-1 at 36. The Reinsurance Policy applies to claims for up to $850,000.00 above the $150,000.00 NCSBT fund retention and contains a total coverage limit of $2,550,000.00. The Declarations page states: "All exclusions contained in the Coverage Agreement and any additional exclusions listed in this Reinsurance Certificate . . . apply to the coverage provided by this Reinsurance Certificate." *Id.*

The Court finds that all of the Plaintiff's negligence claims as pled are excluded from coverage. The coverage agreement excludes "any claim (other than a Personal Injury Claim)[14] arising out of or in connection with, in whole or in part: (a) willful violation of any law; (b) dishonest, fraudulent, malicious, *wanton, willful*, intentional, or criminal acts; (c) acts of *reckless or deliberate indifference*; or (d) eminent domain or inverse condemnation." *See* Doc. No. 47-1 at 7, exclusion 12 (emphasis added). Moreover, the same exclusion states: "The Excess Insurance (if any) does not provide coverage for Claims to which this exclusion applies, including but not limited to Claims for negligent hiring, negligent training . . . and/or negligent supervision." *Id*. Plaintiffs' Amended Complaint specifically alleges the Board's actions and inactions were either "willful, wanton and/or reckless" or "grossly negligent and/or committed in reckless disregard for L.G.'s rights." *(*Doc 24; ¶¶120, 172). Accordingly, this exclusion applies to exclude coverage for Plaintiff's general negligence claim (Claim 4) and negligent hiring, etc. claim (Claim 10).

Further, there is a specific exclusion that applies to Plaintiff's sixth claim for negligent infliction of emotional distress. (Doc 24 at ¶¶137-46). Claims for negligent infliction of emotional distress are excluded from the coverage agreement which states it does not apply "to any claim for intentional infliction of emotional distress or negligent infliction of emotional distress . . . " and "neither the Fund or Excess Insurer will have an obligation to pay Damages" under this exclusion. *See* Doc. No. 47-1 at 9, exclusion 28. Accordingly, because claims for negligent infliction of emotional distress are not covered by the coverage agreement or the excess insurance procured by

_____

[14] The coverage agreement defines "Personal Injury" as false arrest, malicious prosecution, wrongful eviction, invasion of the right of privacy, libel, slander, defamation of character, piracy, copyright infringement, and erroneous service of civil papers, none of which are applicable here. *See* Doc. No. 47-1 at 5.

NCSBT, the Board has not waived its immunity with regard to Plaintiffs' Sixth Cause of Action (Negligent Infliction of Emotional Distress).

In summary, the Board does not have insurance coverage for Plaintiffs' negligence claims, so it retains its governmental immunity against those claims. Therefore, this Court lacks jurisdiction over Plaintiffs' Fourth, Sixth, and Tenth Causes of Action and those claims will be dismissed.

### 2. Section 1983 Claims

The Court now turns to determine whether Plaintiff's allegations are sufficient to state a § 1983 claim against the Board. For a plaintiff's § 1983 claim to survive a 12(b)(6) motion to dismiss for failure to state a claim, she must successfully plead two elements: (1) that the defendants acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional or federal statutory right as a result of that action. *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004). Plaintiff alleges that the Board's failure to train teachers and establish policies "as to how and when … to intervene when school resource officers use force against students" reflects "actions and omissions … made under color of state law" and deprived L.G. of his constitutional "substantive due process rights under the Fourteenth Amendment to bodily integrity." Doc. No. 24 at ¶¶ 177-182.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." *Id.* There are four ways in which a municipality may be held liable for one of their policies or customs:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999). Here, Plaintiff claims that the Board's alleged failure to train and establish policies and procedures related to the use of force by school resource officers was "widespread" and constituted a "custom" of "deliberate indifference" to the "risk that students will be subject to improper force and restraints from school resource officers." *Id.* at ¶¶ 175, 179-180.

As the Supreme Court has explained:

> [A] municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also *Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases— can a city be liable for such a failure under § 1983.

> *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable

> steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.[11]

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–90 (1989). Accordingly, mere negligence is insufficient to expose a municipality to liability under § 1983 for failure to train. A local governing body's failure to adequately train must be so clear as to warrant a finding that it amounts to a policy or custom for which the municipality should be held responsible. *Hall v. Burney*, 454 Fed. App'x 149, 151 (4th Cir. 2011).

Even applying the lenient standards of the review of Rule 12 motions the Court cannot conclude that Plaintiff has adequately and plausibly pled that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [Board] can reasonably be said to have been deliberately indifferent to the need" and that "failure can fairly be said to be the 'moving force [behind] the constitutional violation.'" *See Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 671-672 (4th Cir. 2020).

Plaintiff does not allege any pattern (or even multiple incidents) of harmful interactions between school resource officers and students, disabled or otherwise, in the Iredell-Statesville schools. Instead, accepting Plaintiff's allegations as true along with all reasonable inferences that may be drawn from those allegations, Plaintiff has only alleged that a single school resource officer (who resigned soon after the incident) harmed L.G., ("[t]his cause of action is brought against Defendant Board for deliberate indifference to the specific threat of harm to L.G. …" Doc. No. 24 at ¶175), and that two untrained school employees negligently responded to the officer's improper

conduct. Thus, Plaintiff's Section 1983 allegations do not amount to a plausible claim of a deliberate "policy" of the Board[15] or a "widespread" failure that exhibits "deliberate indifference" to students. *See Jones*, 961 F.3d at 672 (Section 1983 municipal liability generally cannot rest on a single alleged unconstitutional incident); *Semple v. City of Moundsville*, 195 F.3d 708, 713-14 (4th Cir. 1999). Further, the need for specific additional training for teachers on how to handle a situation where a school resource officer mistreats a disabled student cannot be said to be "obvious" in light of the absence of any prior incident similar to the one challenged by Plaintiff or at least a showing that such an issue was likely to arise in the Iredell-Statesville schools (as distinguished from merely being a possibility). Thus, the Court finds that Plaintiff's Section 1983 claim cannot proceed.[16]

### 3. Americans with Disabilities Act and Rehabilitation Act Claims

Finally, Plaintiff asserts claims against the Board under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("Section 504"). Title II of the ADA prohibits discrimination against individuals on the basis of disability by public entities, including when an individual is "excluded from the participation in or . . . denied the benefits of the services, programs, or activities of the public entity . . . ." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act

---

[15] Plaintiff argues that the Board was "plainly aware of the need for policies to avoid likely constitutional violations," because of its "Policy 5120" requirement that the superintendent establish "procedures for school contacts with law enforcement agencies." However, the Board merely identifying a need for coordination with law enforcement *agencies* does not suggest nor establish any constitutionally infirm failure to protect students from the improper conduct of particular law enforcement officers.

[16] By this ruling, the Court does not suggest that the training of school employees on the best practices for handling incidents involving potential harm to students, from whatever source, should not be undertaken to the extent it is not already occurring. Rather, the Court is answering the only question before it, which is whether the Board can, under the applicable legal principles, be held liable under Section 1983 based on the Plaintiff's allegations.

prohibits programs or activities which receive federal funding from discriminating against an individual on the basis of a disability. 29 U.S.C. §794. To state a claim under either statute, a plaintiff must allege that: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502 n.4, 503 (4th Cir. 2016) (combining analysis of ADA and Rehabilitation Act claims). The Fourth Circuit further construes "Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. County*, 515 F.3d 356, 362 (4th Cir. 2008).

Similar to its Section 1983 claim, Plaintiff alleges that the Board violated the ADA and Rehabilitation Act "when it failed to establish procedures to provide reasonable modifications when law enforcement interacts with students with disabilities," Doc. No. 24 at ¶¶192, 203 and when it failed to establish trainings and policies with respect to having law enforcement officers in elementary schools. *Id.* at ¶¶194, 204. Applying the elements necessary to state a claim under either statute, the Court finds that Plaintiff's claims cannot proceed against the Board. There is no dispute (for purposes of this motion) that L.G. has a disability and is otherwise qualified to receive the benefits of the relevant program and activities offered by the Board. However, the Amended Complaint fails to plausibly allege that L.G. was "denied the benefits of such … program or activity, or otherwise discriminated against, on the basis of [his] disability."

Plaintiff acknowledges in the Amended Complaint that L.G. was not suspended from school and no disciplinary action was taken against him by the school as a result of the incident

with Officer Fattaleh. Doc 24 at ¶66. Indeed, Plaintiff alleges that the school wanted to "discuss ideas to make [L.G.] feel safe in school again," *Id.* at ¶71, and that L.G. returned to school on September 12 but "became extremely anxious and agitated and wanted to go home." *Id.* at ¶69. By choice, A.G. has not returned L.G. to the Iredell Statesville school system. *Id.* at ¶¶69-70. Accordingly, Plaintiff does not allege that the Board discriminated against, or excluded L.G. from participating in or receiving the benefits of the Board's education programs or activities on the basis of L.G.'s disability. Moreover, with respect to Plaintiff's argument that by its alleged failure to establish policies or properly train teachers, the Board "discriminated" against disabled students, Plaintiff's other incorporated allegations make clear that these alleged "failures" applied to *all* students, not just disabled students. So, whatever the merits of the claim that the Board should have established better policies and training, those failures do not reflect intentional discrimination on the basis of a disability.

Therefore, the Court will dismiss Plaintiff's ADA and Rehabilitation Act claims against the Board.[17]

---

[17] The Court notes that Plaintiff's ADA and Rehabilitation Act claims are asserted against both the City and the Board. Again, the Court need not and does not reach the merits of these claims against the City, which are not before the Court.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Board's Motion to Dismiss (Doc. No. 39) is **GRANTED; and**

2. Guerin and Manners' Motion to Dismiss (Doc. No. 44) is **DENIED**.

3. This case shall proceed to discovery and further proceedings on the merits on the remaining claims in this action in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 23, 2021

Kenneth D. Bell
United States District Judge